

**United States Department of Justice**

*United States Attorney*
*Southern District of West Virginia*

Robert C. Byrd United States Courthouse
300 Virginia Street, East
Suite 4000
Charleston, WV 25301
1-800-659-8726

Mailing Address
Post Office Box 1713
Charleston, WV 25326
304-345-2200
FAX: 304-347-5104

FILED JUL 1 1 2014
TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

May 1, 2014

J. Timothy DiPiero
DiTrapano Barrett & DiPiero
604 Virginia Street, East
Charleston, West Virginia 25301-2184

Re: United States v. Alvis R. Porter

Dear Mr. DiPiero:

This will confirm our conversations with regard to your client, Alvis R. Porter. As a result of these conversations, it is agreed by and between the United States and Mr. Porter as follows:

1. **CHARGING AGREEMENT.** Mr. Porter agrees to waive his right pursuant to Rule 7 of the Federal Rules of Criminal Procedure to be charged by indictment and will consent to the filing of a single-count information to be filed in the United States District Court for the Southern District of West Virginia, a copy of which is attached hereto as "Plea Agreement Exhibit A."

2. **RESOLUTION OF CHARGES.** Mr. Porter will plead guilty to a violation of 26 U.S.C. § 7202 (Willful failure to collect and pay over payroll tax) as charged in said information.

3. **MAXIMUM POTENTIAL PENALTY.** The maximum penalty to which Mr. Porter will be exposed by virtue of this guilty plea is as follows:

(a) Imprisonment for a period of five years;

(b) A fine of $250,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

_____
Defendant's
Initials

    (c)   A term of supervised release of three years;

    (d)   A mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013;

    (e)   An order of restitution pursuant to 18 U.S.C. §§ 3663 and 3664, as may otherwise be set forth in this plea agreement; and

    (f)   Costs of prosecution.

4. **SPECIAL ASSESSMENT.** Prior to the entry of a plea pursuant to this plea agreement, Mr. Porter will tender a check or money order to the Clerk of the United States District Court for $100, which check or money order shall indicate on its face the name of defendant and the case number. The sum received by the Clerk will be applied toward the special assessment imposed by the Court at sentencing. Mr. Porter will obtain a receipt of payment from the Clerk and will tender a copy of such receipt to the United States, to be filed with the Court as an attachment to this plea agreement. If Mr. Porter fails to provide proof of payment of the special assessment prior to or at the plea proceeding, the United States will have the right to void this plea agreement. In the event this plea agreement becomes void after payment of the special assessment, such sum shall be promptly returned to Mr. Porter.

5. **RESTITUTION.** Notwithstanding the offense of conviction, Mr. Porter agrees that he owes restitution in the amount of $26,951.48 and agrees to pay such restitution, with interest as allowed by law, to the fullest extent financially feasible. In aid of restitution, Mr. Porter further agrees as follows:

    (a)   Mr. Porter agrees to fully assist the United States in identifying and locating any assets to be applied toward restitution and to give signed, sworn statements and testimony concerning assets upon request of the United States.

    (b)   Mr. Porter will fully complete and execute, under oath, a Financial Statement and a Release of Financial Information on forms supplied by the United States and will

_AP_
Defendant's Initials

return these completed forms to counsel for the United States within seven calendar days from the date of the signing of this plea agreement.

(c) Mr. Porter agrees not to dispose of, transfer or otherwise encumber any real or personal property which he currently owns or in which he holds an interest.

(d) Mr. Porter agrees to fully cooperate with the United States in the liquidation of assets to be applied towards restitution, to execute any and all documents necessary to transfer title of any assets available to satisfy restitution, to release any and all right, title and interest he may have in and to such property, and waives his right to exemptions under the Federal Debt Collection Procedures Act upon levy against and the sale of any such property.

(e) Mr. Porter agrees not to appeal any order of the District Court imposing restitution unless the amount of restitution imposed exceeds the amount set forth in this plea agreement. However, nothing in this provision is intended to preclude the Court from ordering Mr. Porter to pay a greater or lesser sum of restitution in accordance with law.

6. **IRS COLLECTION OF RESTITUTION.** If the Court orders Mr. Porter to pay restitution to the IRS for the failure to pay tax, either directly as part of the sentence or as a condition of supervised release, the IRS will use the restitution order as the basis for a civil assessment. See 26 U.S.C. § 6201(a)(4). Mr. Porter does not have the right to challenge the amount of this assessment. See 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor Mr. Porter's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution based assessment, including levy and distraint under 26 U.S.C. 6331.

7. **FORFEITURE.** Notwithstanding the offense of conviction, the parties agree as follows:

_AP_
Defendant's
Initials

(a) The United States has determined that it could institute a criminal and/or civil forfeiture proceeding against Mr. Porter pursuant to Title 18, United States Code, Sections 1956 and 1957 arising out of his involvement in a cash kickback scheme related to work performed by Mr. Porter's company, Quality Oil Company, Inc. d/b/a Southern Construction of Logan at the Mountain Laurel mining complex owned and operated by a subsidiary of Arch Coal, Inc. (the "Construction Work Kickback Scheme").

(b) Mr. Porter recognizes that the United States could institute a civil and/or criminal forfeiture for his role in the Construction Work Kickback Scheme.

(c) Mr. Porter consents to, and otherwise agrees not to contest, an administrative forfeiture of $350,000 instituted by the Internal Revenue Service Criminal Investigative Division pursuant to Title 18, United States Code, Sections 981 and 982.

(d) Within ten (10) days of the filing of the information, Mr. Porter agrees to pay the $350,000 in forfeitable funds to the address below and releases any and all claims he or his company may have to such funds:

> Department of Treasury – Internal Revenue Service
> IRS-CI
> Attn: AFS Torey White
> 400 N. 8th Street
> Room #1024
> Richmond, VA 23219

(e) Mr. Porter's acknowledges that his failure to pay said funds in accordance with the terms of this subparagraph constitutes a breach of the plea agreement.

(f) Mr. Porter shall indemnify the United States or otherwise make whole the value of said funds to which any other person may assert, or has asserted, a claim to lawful ownership or interest.

_____
Defendant's Initials

    (g)  Mr. Porter shall waive any defenses to this criminal action, or to any related administrative or judicial forfeiture action, based in whole or in part on the Excessive Fines Clause of the Eighth Amendment to the Constitution, or the holding or principles set forth in <u>Alexander v. United States</u>, 509 U.S. 544 (1993); <u>United States v. Bajakajian</u>, 524 U.S. 321 (1998); <u>Austin v. United States</u>, 509 U.S. 602 (1993) and their progeny.

    8.  **PAYMENT OF MONETARY PENALTIES.** Mr. Porter agrees not to object to the District Court ordering all monetary penalties (including the special assessment, fine, court costs, and any restitution that does not exceed the amount set forth in this plea agreement) to be due and payable in full immediately and subject to immediate enforcement by the United States. So long as the monetary penalties are ordered to be due and payable in full immediately, Mr. Porter further agrees not to object to the District Court imposing any schedule of payments as merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment.

    9.  **COOPERATION.** Mr. Porter will be forthright and truthful with this office and other law enforcement agencies with regard to all inquiries made pursuant to this agreement, and will give signed, sworn statements and grand jury and trial testimony upon request of the United States. In complying with this provision, Mr. Porter may have counsel present except when appearing before a grand jury. Further, Mr. Porter agrees to be named as an unindicted co-conspirator and unindicted aider and abettor, as appropriate, in subsequent indictments or informations.

    10.  **ASSISTANCE TO INTERNAL REVENUE SERVICE.** Mr. Porter agrees to cooperate with the Internal Revenue Service in the determination of his civil income tax liability and corporate income tax liability for his company, Quality Oil Company, Inc. d/b/a Southern Construction of Logan, for the taxable year 2012 and 2013 and to make available to the examining agents all books, records and other documentary evidence in his or the company's possession, custody or control, including all materials provided to the defense, through discovery or otherwise, during this proceeding by the

                                                                       _/s/ AP_
                                                                   Defendant's Initials

attorneys for the government and any criminal investigators assisting them.

   11. **USE IMMUNITY.** Unless this agreement becomes void due to a violation of any of its terms by Mr. Porter, and except as expressly provided or in paragraph 13 below, nothing contained in any statement or testimony provided by Mr. Porter pursuant to this agreement, or any evidence developed therefrom, will be used against Mr. Porter, directly or indirectly, in any further criminal prosecutions or in determining the applicable guideline range under the Federal Sentencing Guidelines.

   12. **LIMITATIONS ON IMMUNITY.** Nothing contained in this agreement restricts the use of information obtained by the United States from an independent, legitimate source, separate and apart from any information and testimony provided pursuant to this agreement, in determining the applicable guideline range or in prosecuting Mr. Porter for any violations of federal or state laws. The United States reserves the right to prosecute Mr. Porter for perjury or false statement if such a situation should occur pursuant to this agreement.

   13. **STIPULATION OF FACTS AND WAIVER OF FED. R. EVID. 410.** The United States and Mr. Porter stipulate and agree that the facts comprising the offense of conviction and relevant conduct include the facts outlined in the "Stipulation of Facts," a copy of which is attached hereto as "Plea Agreement Exhibit B."

   Mr. Porter agrees that if he withdraws from this agreement, or this agreement is voided as a result of a breach of its terms by Mr. Porter, and Mr. Porter is subsequently tried on any of the charges in the information, the United States may use and introduce the Stipulation of Facts in the United States case-in-chief, in cross-examination of Mr. Porter or of any of his witnesses, or in rebuttal of any testimony introduced by Mr. Porter or on his behalf. Mr. Porter knowingly and voluntarily waives, see <u>United States v. Mezzanatto</u>, 513 U.S. 196 (1995), any right he has pursuant to Fed. R. Evid. 410 that would prohibit such use of the Stipulation of Facts. If the Court does not accept the plea agreement through no fault of the defendant, or the Court declares the agreement void due to a breach of its terms by the United States, the Stipulation of Facts

_AP_
Defendant's Initials

cannot be used by the United States.

The United States and Mr. Porter understand and acknowledge that the Court is not bound by the Stipulation of Facts and that if some or all of the Stipulation of Facts is not accepted by the Court, the parties will not have the right to withdraw from the plea agreement.

14. **AGREEMENT ON SENTENCING GUIDELINES.** Based on the foregoing Stipulation of Facts, the United States and Mr. Porter agree that the following provision of the United States Sentencing Guidelines applies to this case.

<u>USSG § 2T1.6</u>
Offense level from § 2T4.1 tax table
(tax loss of $26,951.48)                               12

Adjusted Offense Level                                 12

The United States and Mr. Porter acknowledge and understand that the Court and the Probation Office are not bound by the parties' calculation of the United States Sentencing Guidelines set forth above and that the parties shall not have the right to withdraw from the plea agreement due to a disagreement with the Court's calculation of the appropriate guideline range.

15. **WAIVER OF APPEAL AND COLLATERAL ATTACK.** Mr. Porter knowingly and voluntarily waives the right to seek appellate review of his conviction and of any sentence of imprisonment, fine or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742, so long as that sentence of imprisonment, fine or term of supervised release is below or within the Sentencing Guideline range corresponding to offense level 12. The United States also waives its right to seek appellate review of any sentence of imprisonment or fine imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742, so long as that sentence of imprisonment or fine is within or above the Sentencing Guideline range corresponding to offense level 10.

_____
Defendant's Initials

Mr. Porter also knowingly and voluntarily waives the right to challenge his guilty plea and his conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

16. **WAIVER OF FOIA AND PRIVACY RIGHT.** Mr. Porter knowingly and voluntarily waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without any limitation any records that may be sought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, following final disposition.

17. **FINAL DISPOSITION.** The matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to a specific sentence. The United States reserves the right to:

(a) Inform the Probation Office and the Court of all relevant facts and conduct;

(b) Present evidence and argument relevant to the factors enumerated in 18 U.S.C. § 3553(a);

(c) Respond to questions raised by the Court;

(d) Correct inaccuracies or inadequacies in the presentence report;

(e) Respond to statements made to the Court by or on behalf of Mr. Porter;

(f) Advise the Court concerning the nature and extent of Mr. Porter's cooperation; and

*[initials: AP]*
Defendant's
Initials

    (g)   Address the Court regarding the issue of Mr. Porter's acceptance of responsibility.

    18.  **VOIDING OF AGREEMENT.**  If either the United States or Mr. Porter violates the terms of this agreement, the other party will have the right to void this agreement. If the Court refuses to accept this agreement, it shall be void.

    19.  **TAX DIVISION APPROVAL.**  It is understood that this agreement is conditioned upon approval by the Department of Justice, Criminal Tax Division. In the event such approval is not granted, this agreement shall be void.

    20.  **ENTIRETY OF AGREEMENT.**  This written agreement constitutes the entire agreement between the United States and Mr. Porter in this matter. There are no agreements, understandings or recommendations as to any other pending or future charges against Mr. Porter in any Court other than the United States District Court for the Southern District of West Virginia.

Acknowledged and agreed to on behalf of the United States:

                          R. BOOTH GOODWIN II
                          United States Attorney

By: _____
     MEREDITH GEORGE THOMAS
     Assistant United States Attorney

By: _____
     THOMAS C. RYAN
     Assistant United States Attorney

MGT/smw

_____
                        Defendant's
                        Initials

I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this ten-page agreement that I have read and carefully discussed every part of it with my attorney, that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement. I further acknowledge that my attorney has advised me of my rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to me other than those in this agreement, and that no one has threatened me or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

_____          5-1-14
Alvis R. Porter                    Date Signed
Defendant

_____          5-1-14
J. Timothy DiPiero                 Date Signed
Counsel for Defendant

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.  CRIMINAL NO. _____
 26 U.S.C. § 7202

ALVIS R. PORTER

## I N F O R M A T I O N

The United States Attorney Charges:

1. At all relevant times, Defendant ALVIS R. PORTER owned and operated Quality Oil, Inc. ("Quality Oil"), doing business as Southern Construction of Logan ("Southern Construction"), a West Virginia corporation that provided construction services to a subsidiary of Arch Coal, Inc., who owned and operated the Mountain Laurel Mining Complex at or near Sharples, Logan County, West Virginia.

2. During the second half of the calendar year 2012 and the full calendar year of 2013, Defendant ALVIS R. PORTER employed a person known to the United States Attorney ("Known Person Two") at the Mountain Laurel Mining Complex who worked as a foreman supervising a slate dump and excavation projects.

PLEA AGREEMENT EXHIBIT "A"

3. From on or about January 2013, through and until March 2013, within the Southern District of West Virginia, defendant ALVIS R. PORTER willfully failed to collect, truthfully account for, and pay over to the Internal Revenue Service trust fund taxes totaling approximately $3,464.12, from the total taxable wages of Known Person Two, for the first quarter of 2013, ending March 31, 2013.

In violation of Title 26, United States Code, Section 7202.

UNITED STATES OF AMERICA

R. BOOTH GOODWIN II
United States Attorney


By: _____
MEREDITH GEORGE THOMAS
Assistant United States Attorney



By: _____
THOMAS C. RYAN
Assistant United States Attorney




PLEA AGREEMENT EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.                               CRIMINAL NO. _____

ALVIS R. PORTER

## STIPULATION OF FACTS

The United States and Mr. Porter stipulate and agree that the facts comprising the offense of conviction in the Information in the Southern District of West Virginia, and the relevant conduct for that offense, include the following:

From late 2005 through and until at least early 2014, Mr. Porter operated Quality Oil, Inc. ("Quality Oil"), doing business as Southern Construction of Logan ("Southern Construction"), on the site of the Mountain Laurel Mining Complex in Sharples, Logan County, West Virginia, which was owned and operated by a subsidiary of Arch Coal, Inc. Quality Oil provided a variety of construction services to the Mountain Laurel Mining Complex, including the rental and operation of heavy equipment.

In approximately 2009, the general manager of the Mountain Laurel Mining Complex ("Known Person Three") advised Mr. Porter that if his company wanted to continue to work on the property, Mr. Porter would have to make monthly cash payments, or in other words, pay kickbacks to Known Person Three (the "Construction Work Kickback Scheme"). Over the course of approximately four years, Mr. Porter was required by Known Person Three to pay $5,000 per month and that amount eventually increased to $10,000 a month. Over that time period, Mr. Porter estimates that he paid approximately $400,000 in cash to Known Person Three as part of the Construction Work Kickback Scheme. These payments

_____<br>
Defendant's<br>
Initials

were always made in person and normally on the property at the Mountain Laurel Mining Complex. Mr. Porter acknowledged that these payments were wrong, but he believed were necessary at the time to retain the work for Quality Oil at the Mountain Laurel Mining Complex.

Quality Oil generally employed thirty people on the Mountain Laurel Mining Complex, but that number fluctuated depending on the work that needed to be performed. Among other employees, during the half of the calendar year of 2012 and the full calendar year 2013, Mr. Porter employed a foreman supervising slate dump and excavation ("Known Person Two"). During the year-and-a-half period, Mr. Porter paid Known Person Two approximately $63,960 in wages.

Mr. Porter was aware and knew that that he was required by federal tax laws to withhold what are commonly referred to as "trust fund taxes" from each Quality Oil employee's paychecks. "Trust fund" taxes are comprised of federal income and Federal Insurance Contribution Act ("FICA") taxes, which are taxes comprising Social Security and Medicare taxes. In addition, Mr. Porter knew that Quality Oil was required to also pay what is commonly referred to as the "employer's share" of FICA taxes, which is typically a matching amount to the employee's withholding. Mr. Porter knew that his company was required to report the withheld trust fund taxes to the Internal Revenue Service ("IRS") on quarterly Form 941.

During the period that Mr. Porter operated Quality Oil at the Mountain Laurel Mining Complex, he withheld trust fund taxes from numerous employees' paychecks, and paid over those trust fund taxes to the Internal Revenue Service.

Mr. Porter, however, knowingly and willfully failed to collect and pay over trust fund taxes for Known Person Two for half of the calendar year of 2012 and the full calendar year of 2013. To conceal his employment, Mr. Porter paid Known Person Two cash wages so that the employee would not appear on Quality Oil's books and records.

During the first quarter of 2013, that is, from January through March 2013, Mr. Porter failed to collect and pay over approximately $3,464.12 of trust fund taxes from the total

_____
Defendant's Initials

**PLEA AGREEMENT EXHIBIT "B"**

taxable wages of Known Person Two.  Mr. Porter also did not collect and pay over the employer's share of FICA taxes.

For the half of the year 2012 and the full year of 2013, Mr. Porter admits that, based on a salary of $63,960 for Known Person Two for that period, Mr. Porter knowingly and willfully failed to collect and pay over approximately $19,996.75 in trust fund taxes and $6,954.73 for the employer's share of FICA taxes.

This Stipulation of Facts does not contain each and every fact known to Mr. Porter and to the United States concerning his involvement and the involvement of others in the charges set forth in the Information, and is set forth for the limited purpose of establishing a factual basis for the defendant's guilty plea.

Stipulated and agreed to:

_____   5-1-14
ALVIS R. PORTER             Date
Defendant

_____   5-1-14
J. TIMOTHY DIPIERO          Date
Counsel for Defendant

_____   5.1.14
MEREDITH GEORGE THOMAS      Date
Assistant United States Attorney

_____   5.1.14
THOMAS C. RYAN              Date
Assistant United States Attorney

_____
Defendant's
Initials

**PLEA AGREEMENT EXHIBIT "B"**

3

```
DUPLICATE

Court Name: US District Court/SDWV
Division: 2
Receipt Number: CHAR007839
Cashier ID: aberger
Transaction Date: 07/10/2014
Payer Name: ALVIS RENNIE PORTER

CRIMINAL DEBT
 For: ALVIS RENNIE PORTER
 Case/Party: D-WVS-2-14-CR-000112-001
 Amount:         $100.00

CASH
 Amt Tendered:  $100.00

Total Due:      $100.00
Total Tendered: $100.00
Change Amt:       $0.00


Only when bank clears the check,
money order, or verifies credit of
funds is the fee or debt officially
paid or discharged. A 53 fee will
be charged for a returned check.
```