IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                      CRIMINAL ACTION NO. 2:14-cr-00112

ALVIS R. PORTER,
    Defendant.

## DEFENDANT'S SENTENCING MEMORANDUM

Because of the unusually low guidelines, the defendant's very early acceptance of responsibility, his timely approaching the government before he had been contacted by federal officials and by providing key assistance and other mitigating factors, a sentence of probation is appropriate in this case.

### A. PORTER'S TIMELY ASSISTANCE WARRANTS PROBATION.

Defendant requests that the Court hold an in camera hearing during the sentencing hearing on February 17, 2015 to learn the full extent of such assistance.

### B. THE NATURE OF THE OFFENSE AND DEFENDANT'S HISTORY AND CHARACTERISTICS WARRANT PROBATION

In Gall v. U.S., 552 US. 38 (2007), the Supreme Court breathed life into Congress's express intent in 25 USC § 994 (j) that the "Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense...."

Naturally, any felony conviction can be considered "serious;" a felony surely has serious consequences for a defendant such as Mr. Porter, which is addressed below. But a tax violation in the monetary range in Mr. Porter's case is not particularly serious especially when compared to other cases typically seen in federal court. Accordingly, Mr. Porter's case falls within the kind of case Congress considers appropriate for a sentence of probation.

Several mitigating factors, of the kind described in Gall, exist in this case and are listed below:

1) This was Mr. Porter's first offense; he has no criminal record.

2) His conviction is for a tax violation and thus no violence was involved.

3) Mr. Porter is a good family man, has great family support and has a long and consistent history of extending kindness and generosity to various persons and local groups, as reflected in the many letters of support attached . See Group Ex. A.

4) Mr. Porter paid in full his forfeiture and restitution amounts prior to his guilty plea hearing.

5) By his oral and written admissions to the government, his probation officer and this Court, Mr. Porter has expressed sincere remorse for the part he played in violating the tax laws and in perpetuating an illegal practice and a corrupt culture of extortion and kickback schemes.

6) Mr. Porter is not in good health. In the last two and a half years, he has suffered a stroke and was seriously injured in a major head-on collision involving a fatality. He is severely diabetic and as reflected in paragraphs 78 - 81, of his presentence report has a myriad of conditions requiring medication and monitoring.

7) Mr. Porter has already suffered serious consequences. A felony conviction leaves a stigma

2

which is permanent and pervasive. See U.S. v. Prosperi, 686 F. 3d 32 48 1st Cir. 2012). At the time Mr. Porter was advised basically that he had "to pay to stay," his company had been working at Mountain Laurel for approximately two years without making any payments. His company employed over fifty employees at the time and he had signed as a personal guarantor for over $4 million in loans on his various pieces of equipment. See a list of the various pieces of heavy equipment and respective amounts owed at the time, attached as Ex. B. As a result of his felony conviction, his company's contract with Arch was terminated and his business effectively destroyed, which left him personally guaranteeing some large outstanding loans. Mr. Porter was proud of the work his company did; he often received compliments from the Arch engineers who inspected his work. During the time his company worked on the Arch site, his company never increased their prices and never over-charged or sent in false invoices to help cover the "extra" payments. Losing a vibrant business, which he hoped his sons would inherit, has been an additional painful consequence of his criminal actions and subsequent felony conviction.

8) Incarceration is not necessary to protect the public as Mr. Porter poses no danger to the community. In U.S. v. Edwards, 595 F.3d 1004, 1016 (9th Cir. 2010), the Court powerfully noted that "Section 3553(a), for instance, does not require the goal of general deterrence be met through a period of incarceration." Further, the Court quoting legislative history concluded that it "may very often be that release on probation under conditions designed to fit the particular situation will adequately satisfy any appropriate deterrent or punitive purpose." Id. at fn. 9. The Department of Justice published a recent article supporting this notion. See attached Ex. C.

9) Mr. Porter has demonstrated what might be termed, "Extraordinary Acceptance of Responsibility." First of all, several months prior to the federal investigation becoming known to him

3

or others in Logan, he quit making monthly payments. Shortly after he became aware of the investigation, he authorized counsel to approach the government with an offer to cooperate. The details of that proffer occurred on Monday, March 24, 2014, the day after the Sunday meeting on March 23, 2014 wherein Mr. Herndon and Mr. Roeher met federal authorities for the first time. However, several days before the Monday meeting and the reason the meeting had been scheduled, counsel had advised the federal prosecutor that Mr. Porter was ready to cooperate, and that his truthful testimony would be crucial to their investigation, because he could confirm that hand to hand cash payments had been made on a monthly basis.

## CONCLUSION

In summary, Mr. Porter is a quiet, good family man and a man who cares about others. He has provided timely substantial assistance while suffering severe consequences for his crime. As a first-time offender of a non-violent crime, and for the many reasons listed above, a sentence of probation would be most appropriate.

Respectfully submitted,

**ALVIS R. PORTER**
By Counsel

/s/ J. Timothy DiPiero
J. Timothy DiPiero (WVSB# 1021)
DiTrapano, Barrett, DiPiero, McGinley & Simmons, PLLC
P.O. Box 1631
Charleston, West Virginia 25326

(304) 342-0133 (telephone)

(304) 342-4605 (facsimile)
E-Mail: Tim.DiPiero@dbdlawfirm.com

4

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                  CRIMINAL ACTION NO. 2:14-cr-00112

ALVIS R. PORTER,

        Defendant.

## CERTIFICATE OF SERVICE

I, J. Timothy DiPiero, do hereby certify that a true and correct copy of the foregoing **DEFENDANT'S SENTENCING MEMORANDUM** was served upon the following counsel of record by electronic filing, this 13th day of February, 2015 and addressed as follows:

> Merideth George Thomas
> Assistant United States Attorney
> 300 Virginia Street, East
> Room 4000
> Charleston, WV 25301
> meredith.thomas@usdoj.gov

> /s/ J. Timothy DiPiero
> DiTrapano, Barrett, DiPiero, McGinley &
> Simmons, PLLC
> P.O. Box 1631
> Charleston, West Virginia 25326
> (304) 342-0133 (telephone)
> E-Mail: Tim.DiPiero@dbdlawfirm.com