IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

```
_____x
                               :
UNITED STATES OF AMERICA,       :        Criminal Action
                               :
             Plaintiff,         :        No.  2:14-cr-00112
                               :
v.                              :
                               :        Date:  July 10, 2014
ALVIS R. PORTER,                :
                               :
             Defendant.         :
_____x
```

TRANSCRIPT OF PLEA HEARING HELD
BEFORE THE HONORABLE THOMAS E. JOHNSTON, JUDGE
UNITED STATES DISTRICT COURT
IN CHARLESTON, WEST VIRGINIA

APPEARANCES:

For the Government:          AUSA MEREDITH G. THOMAS
                             U.S. Attorney's Office
                             P.O. Box 1713
                             Charleston, WV  25326-1713

For the Defendant:           J. TIMOTHY DIPIERO, ESQ.
                             Ditrapano Barrett & Dipiero
                             604 Virginia Street East
                             Charleston, WV 25301

Probation Officer:           Michele Jones

Court Reporter:              Ayme Cochran, RMR, CRR

Proceedings recorded by mechanical stenography;
transcript produced by computer.

1      PROCEEDINGS had before The Honorable Thomas E. Johnston,

2    Judge, United States District Court, Southern District of West

3    Virginia, in Charleston, West Virginia, on July 10, 2014, at 9:07

4    a.m., as follows:

5         COURTROOM DEPUTY CLERK:  The matter before the Court is

6    the United States of America versus Alvis R. Porter, criminal

7    action number 2:14-cr-00112, scheduled for a plea hearing.

8         THE COURT:  Good morning.  Will counsel please note

9    their appearances?

10        MS. THOMAS:  Meredith Thomas on behalf of the United

11    States.

12        MR. DIPIERO:  Tim DiPiero on behalf of Mr. Alvis

13    Porter, who is also present, Your Honor.

14        THE COURT:  All right.  Good morning.

15    Mr. Porter, will you please stand, and I will ask the deputy

16    clerk to administer an oath to you at this time.

17        COURTROOM DEPUTY CLERK:  Please raise your right hand.

18        **ALVIS R. PORTER, DEFENDANT, SWORN**

19        THE COURT:  You may be seated.

20    Mr. Porter, do you understand that you are now under oath

21    and you must tell the truth and, if you testify falsely, you may

22    face prosecution for perjury or for making a false statement?

23        THE DEFENDANT:  Yes, sir.

24        THE COURT:  And, throughout the course of this hearing,

25    I'm going to be asking you a number of questions and I want to

make sure that you and I are communicating clearly.  So, if at any time you don't understand a question that I ask or anything else that occurs in this hearing, I want you to feel free to speak up and seek clarification.

Also, if at any time you need to confer with your attorney, I'll be pleased to pause the proceedings to allow you to do so.

Do you understand all that?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Let's begin then with a discussion similar to the discussion I had with Mr. DiPiero and Mr. Rohr yesterday.

Mr. Porter, you have the right to the effective assistance of counsel in this case.  Now, that right includes the right to have separate legal representation from any other defendant who may be involved in this to -- in order to avoid conflicts of interest.  Now, I can't anticipate every potential conflict of interest that could occur in any case, especially this one, when I don't know that much about it yet.  The lawyers know much more about it than I do.

But, essentially, a conflict of interest arises because your attorney, Mr. DiPiero, has a duty to be entirely loyal to you in his representation of you in look -- and in the process of looking out for your interests alone.  He does represent three other defendants in related cases.  He has a similar duty -- actually, he has an identical duty to those defendants, as well,

to be loyal to them and to look out for their best interests.

In criminal litigation, there's a lot of potential for those interests to come into conflict and that's what we are -- that's what I'm concerned about in this discussion. An example of that would be that, for example, at sentencing -- let's say at sentencing, Mr. Rohr -- an issue came up in which your testimony might be useful. That would -- that would put Mr. DiPiero in an awkward position in which the Government might be calling you as a witness against Mr. Rohr and Mr. DiPiero would be put in a position where he would have to cross examine you and perhaps try to question you in a way that would question your credibility in an effort to execute his duty of loyalty to Mr. Rohr.

Just an example. Don't know if that would happen, but I'm just trying to give you a sense of the possibilities of conflicts of interest when one lawyer represents multiple individuals involved in more or less the same set of cases.

Now, do you understand everything I've told you so far?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Mr. DiPiero, I'm going to ask you again, and I think that we can probably make this discussion a little bit more brief than yesterday since we were sort of feeling our way through it yesterday, but I would ask you to place on the record the circumstances of your representation of Mr. Porter and your perspective on the issue of potential conflicts of interest.

1    I do note for the record, as I did in the other one -- and,

2  by the way, I have the waivers in the record in Mr. Rohr's case

3  and I will adopt those for the record for this case, as well.

4    Staci, do you have a copy of that?

5    MR. DIPIERO:  I have copies, if you want them, Your

6  Honor.

7    THE COURT:  I'm going to need a copy then of --I

8  believe Mr. Porter and Mr. Rohr are on the same waiver.

9    MR. DIPIERO:  No.  There are different ones.  It's

10  okay.

11    THE COURT:  All right.  And, Mr. Porter, I want you to

12  listen carefully to this discussion and, in particular, at this

13  point, to Mr. DiPiero's comments.

14    MR. DIPIERO:  I'll try to be brief, Your Honor.  We had

15  -- our firm had represented Mr. Porter a couple years ago on a

16  civil matter.  He was in a serious car accident and I ended up

17  representing him on that.

18    And then he learned of a subpoena, I think, back in January

19  of this year and he called me about that and asked me to

20  represent him in regards to any possible investigation that was

21  going on, and so I did, and he made contact with the United

22  States Attorney's Office.  They weren't ready to really meet with

23  me yet.

24    And a couple of months later, you know, some federal agents

25  approached Mr. Rohr, who I have known for several years, and he

immediately called me and asked me to be his attorney, and I said I have -- "I'm representing Alvis" and I explained the situation to him. I called Mr. Porter and I explained -- after Mr. Rohr said it would be okay with him.

And I called Mr. Porter and, as I mentioned yesterday, they really -- even though they've known each other well for many years, their businesses have really no -- no real connection with respect to Arch Coal.

And so, what happened, which was kind of unusual, is that Gary said, "My partner wants -- we want to come in and cooperate together. We want you to represent both. We want you to represent both of us."

So, I called -- first off, I also called the United States Attorney's Office before I called Mr. Potter to see if it was okay by them. I did call the United States Attorney's Office. I again called Mr. Porter and, as it so happens, we met several hours here on March 23rd.

I think they approached Mr. Rohr on March 21st. So this happened very, very quickly. They both wanted to cooperate immediately.

The next day -- they -- they asked Mr. Herndon, who was a partner of Mr. Ellis', not to speak to him because they wanted to see if Mr. Ellis would come clean and come truthful because they were meeting with him the next day. He did, and I got a call that says, "He needs an attorney." You know, "Do you think you

1    can?"  I said, "Well, do you think I can", and it was just kind

2    of that conversation.  I said, "It's really unusual, but they're

3    partners, too.  He's telling the exact same story.  They're

4    cooperating fully."  By "story", I mean telling the facts the

5    same.

6         And so, again, I had to call Mr. Potter and, in each

7    instance, I explained to Mr. Porter, again, he really has no

8    connection.  The others do have some connection, obviously,

9    business-wise, but he really has no connection.

10         They know each other.  It's a small town.  They know each

11   other and, through that process, I got approval from Mr. Ellis,

12   and Mr. Rohr, and Mr. Herndon, as well as Mr. Porter, to go ahead

13   with Mr. Ellis.  That's not really a short version, but it's

14   about what happened.

15         Through the process, I was communicating with each, and I

16   got a waiver prepared for each of them, and then I was told that

17   Judge Copenhaver -- I didn't know who was going to get this --

18   Judge Copenhaver sometimes likes the paragraph that says

19   specifically that -- an example you raised that could come up,

20   which could knock me out of representing either person; if I was

21   happening to cross examine one client for another client, I might

22   be knocked out of both.  So, that's why the extra paragraph was

23   put into these waivers.

24         And so, Judge, it's the first time it's ever happened to me,

25   but it was just a very unusual set of circumstances where I

believe strongly that we are not going to have a problem.  I know -- I didn't know your history of someone saying that and then -- and then it not being true eventually, but I really sincerely believe -- and would not put myself in this position for them or for myself if I didn't believe it very strongly.

THE COURT:  Ms. Thomas?

MS. THOMAS:  The United States has no objection to Mr. DiPiero representing all four defendants.  Again, as I said yesterday, at this point in time, we have no reason to believe that such an issue regarding testimony at sentencing will come up.

THE COURT:  All right.  Okay.  I want to just ask a few more questions and make sure that we're all on the same page.

Mr. Porter, did you hear everything that your attorney just said?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  Did you understand all of that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Are you understanding this entire discussion?

THE DEFENDANT:  Yes, sir.

THE COURT:  And are these matters that you have discussed with your attorney prior to this hearing?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand that there's a danger in

having your lawyer represent someone who has, maybe not an

interest in the outcome of this case but, nonetheless, who is

facing criminal charges in a related investigation to yours; in

other words, there's danger of a potential conflict of interest?

THE DEFENDANT: Yes, sir.

THE COURT: All right. And did -- in addition to

explaining all of this to you, did Mr. DiPiero answer any

questions that you had about this?

THE DEFENDANT: Yes, sir, Your Honor.

THE COURT: And, notwithstanding your attorney's

representation of these three other individuals, do you want your

attorney to continue to represent you in this case?

THE DEFENDANT: Yes, sir, Your Honor.

THE COURT: Do you understand that if you didn't want

Mr. DiPiero to represent you, that the Court would continue this

matter so that you would have time to hire another attorney?

THE DEFENDANT: Yes, sir.

THE COURT: And, knowing all of this, you would still

like to proceed?

THE DEFENDANT: Yes, sir.

THE COURT: I note that you have -- I've been provided

with a Waiver of Conflict -- Potential Conflict of Interest Form.

That has been signed by you; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: And have you read that form?

```
 1                    THE DEFENDANT:  I have.

 2                    THE COURT:  And have you gone over that with your

 3      attorney?

 4                    THE DEFENDANT:  I have.

 5                    THE COURT:  Do you believe that you fully understand

 6      the contents of that form?

 7                    THE DEFENDANT:  Yes, sir.

 8                    THE COURT:  Did your attorney answer any questions that

 9      you may have had about the content of the form?

10                    THE DEFENDANT:  Yes, sir.

11                    THE COURT:  All right.  Anything about this form or

12      waiver that you don't understand or that you have questions

13      about?

14                    THE DEFENDANT:  No, sir.

15                    THE COURT:  All right.  I will go ahead and make this

16      copy of the waiver a part of the record for this proceeding.  It

17      would be an onus statement to say that I'm convinced that this is

18      going to work out, but based on the record that I have right now,

19      I think we can go ahead and move forward, which we will -- which

20      we will do.

21          All right.  Mr. Porter, let's begin by -- by -- I'll ask

22      you, how old are you?

23                    THE DEFENDANT:  61.

24                    THE COURT:  And can you briefly describe your

25      educational background?
```

1          THE DEFENDANT:  I have a high school education and one

2     and a half years of college.

3          THE COURT:  And can you read and write and understand

4     the English language?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Can you briefly describe your work

7     experience?

8          THE DEFENDANT:  I did -- I worked on a coal prep plant

9     and run equipment and did excavation work.  And when the mines

10    got real slow, I took a job -- I ran for an office and was

11    Circuit Clerk in Logan County for several years, and then went

12    back into the construction business, back into the excavation

13    earth-moving part of the construction.

14         THE COURT:  All right.  Have you taken any medicine or

15    drugs or consumed any alcoholic beverages within the last

16    24 hours?

17         THE DEFENDANT:  Yes, sir.  I've took my normal

18    medicines.

19         THE COURT:  Okay.  Do you have a list of those?

20         THE DEFENDANT:  I do.

21         THE COURT:  All right.  Maybe I'll ask the -- your

22    attorney to tender those to the Court and then we'll go over them

23    quickly.  Are these -- is this a similar list to what's listed in

24    the Pretrial Services Report?

25         THE DEFENDANT:  Yes, sir.

 1          MR. DIPIERO:  I believe so.

 2          THE DEFENDANT:  Yes.

 3          MR. DIPIERO:  We just got that.  Yes.

 4          THE COURT:  This is a pretty long list.

 5          THE DEFENDANT:  It is.

 6          THE COURT:  Did you take all of these in the last

 7    24 hours?

 8          THE DEFENDANT:  All of them except the last one that I

 9    wrote in down there.  I only take that when I have severe back

10    pain, which is, you know, once every four, five, six months.

11          THE COURT:  Okay.

12          THE DEFENDANT:  Usually, a prescription will last me a

13    year or longer.

14          THE COURT:  All right.  So, I'm just going to run

15    through this very quickly.

16          THE DEFENDANT:  Okay.

17          THE COURT:  And I'm going to try to pronounce this

18    correctly.  Maybe what we'll do is make a copy of this.  I don't

19    know that we need to put it in the record, but the probation

20    officer will need it.

21       Multi vitamin, mineral supplement -- that's not a

22    prescription drug.  So, there's Maxzide for blood pressure.

23    That's a diuretic or a water pill?

24          THE DEFENDANT:  That's a diuretic, yes, sir.

25          THE COURT:  All right.  And Zoloft, an antidepressant;

Glucotrol for diabetes?

THE DEFENDANT:  Norvasc for blood pressure?

THE DEFENDANT:  Yes.

THE COURT:  Lantus Solostar?

THE DEFENDANT:  Yes, sir.

THE COURT:  That's for diabetes?

THE DEFENDANT:  That's an injection, yeah.

THE COURT:  All right.  And you've had that within the last 24 hours?

THE DEFENDANT:  I have.

THE COURT:  Okay.  Pepcid, that's for acid.  That's probably not a prescription; or is it?

THE DEFENDANT:  It is a prescription.

THE COURT:  Prescription strength?  Okay.  That's for acid reflex.  Ativan for anxiety; Plavix, which is a blood thinner; Toprol, which is for your blood pressure.

THE DEFENDANT:  Yes, sir.

THE COURT:  And Lipitor for cholesterol.

THE DEFENDANT:  Yes, sir.

THE COURT:  That's all you've taken within the last 24 hours?

THE DEFENDANT:  No, sir.  I have also taken -- and I thought it was on there.  I take two over-the-counter fish oil pills and an aspirin each day.

THE COURT:  Yeah.  It's not on there, but those are

1  both over-the-counter?

2         THE DEFENDANT:  Yes, sir.

3         THE COURT:  All right.  So, my question then for all of

4  this is, to the best of your knowledge, as you sit here today,

5  are you suffering from any side effects from any of those

6  medications that would in any way affect your ability to fully

7  participate in this hearing today?

8         THE DEFENDANT:  No, sir.

9         THE COURT:  All right.  Have you ever been treated for

10  any mental illness or addiction to drugs of any kind?

11         THE DEFENDANT:  No, sir.

12         THE COURT:  I note that there are a couple -- there's

13  anxiety and depression medications on your list there.  Are those

14  prescribed by your family physician?

15         THE DEFENDANT:  They are.

16         THE COURT:  All right.  Do you know where you are and

17  why you are here today?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Do you have any hearing impairment or other

20  disability which would prevent you from fully participating in

21  this hearing today?

22         THE DEFENDANT:  No, sir.

23         THE COURT:  Mr. DiPiero, do you have any reason to

24  question the competence of your client?

25         MR. DIPIERO:  No, sir, Your Honor.  Those -- those

pills are as a result of the car accident, the ones with the

anxiety and depression, where a young man was killed in that

wreck.

THE COURT:  All right.  And I -- there's been -- other

than that medication, there's been no other mental health

treatment?

THE DEFENDANT:  No, sir.

THE COURT:  All right.  All right.  The original of the

plea agreement, I believe, has been tendered to the Court.  Is

this the same -- have there been any modifications to the

agreement since I was provided one before the hearing?

MS. THOMAS:  No, Your Honor.

THE COURT:  All right.  Very well.

All right.  Mr. Porter, is that your signature that appears

on the tenth and final page of the plea agreement?

THE DEFENDANT:  Yes, sir, it is.

THE COURT:  And are those your initials that appear on

the other pages of the plea agreement?

THE DEFENDANT:  Yes, sir, it is.

THE COURT:  And have you read and reviewed with your

attorney each of the 20 paragraphs of the plea agreement and the

exhibits attached to the plea agreement?

THE DEFENDANT:  Yes, sir.

THE COURT:  And do you wish to have the various terms

of the plea agreement orally stated on the record or do you

1    believe that that's unnecessary?

2              THE DEFENDANT:  I believe that's unnecessary.

3              THE COURT:  All right.  And do you understand and agree

4    with all of the terms and provisions contained in the plea

5    agreement and its exhibits?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Mr. DiPiero, have you reviewed each of the

8    20 paragraphs of the plea agreement and its exhibits with your

9    client?

10             MR. DIPIERO:  I have, Your Honor.

11             THE COURT:  And, Mr. DiPiero and Ms. Thomas, are there

12   any reasons why either of you believe that the various terms of

13   the plea agreement should be orally stated on the record?

14             MS. THOMAS:  No, Your Honor.

15             MR. DIPIERO:  No, Your Honor.

16             THE COURT:  All right.  Very well.  Nonetheless, Mr.

17   Porter, there are several provisions of the plea agreement I want

18   to talk with you about, beginning with Section 5, which appears

19   on Page 2 and runs over onto Page 3.  Section 5 is entitled

20   "Restitution" and, in the beginning of it, on Page 2, it recites

21   that you agree that you owe restitution in the amount of

22   $26,951.48, plus interest.  That's restitution to the IRS, am I

23   correct?

24             MS. THOMAS:  Yes, Your Honor.

25             THE COURT:  All right.  Very well.

1    Do you understand that?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  All right.  And then, Subsection (e) to

4    Section 5 is an appeal waiver and, first of all, let me ask you,

5    do you understand that a "waiver" is a legal term that means you

6    are giving something up?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  All right.  So, in Subsection (e) of

9    Section 5 on Page 3, do you understand that you waive the right

10   to appeal any order of restitution unless the amount of

11   restitution imposed exceeds the amount set forth in this

12   paragraph?  Do you understand that waiver?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  All right.

15             MR. DIPIERO:  Your Honor?

16             THE COURT:  Yes?

17             MR. DIPIERO:  If I could, he has tendered to me a check

18   in this amount of $26,951.48 for me to pass on, but we have

19   learned that there may be certain amended returns that may have

20   to be done to make that -- make that done officially.  We're not

21   really sure exactly how to do that, but we're working on that

22   phase, but the money has been tendered to me, and the restitution

23   -- I mean, the forfeiture check has already been paid, but this

24   one has been tendered to me.  I have it.  It's just a matter of

25   what form that's going to take and how we're going to accomplish

1    that.

2              THE COURT:  All right.  Very well.  Thank you.

3         And then, in Paragraph 6, Mr. Porter, do you understand that

4    any order of restitution will be used by the IRS as a basis for a

5    civil assessment?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  All right.  Then, that's on Page 3.

8         On Page -- also, I want to refer you to Section 7 of the

9    plea agreement.  I understand that your attorney has said you

10   already paid over the amount agreed to with regard to the

11   forfeiture matter, but I want to go over that with you anyway.

12        Section 7 is entitled "Forfeiture".  It begins on Page 3 and

13   runs over to Page 5, actually.  It does recite that you agree in

14   lieu of other property to pay over to the IRS $350,000.00 as a --

15   an administrative forfeiture and that's in Subsection C of

16   Section 7.

17        Subsection (g) provides that you will waive any defenses to

18   the forfeiture action.  Do you understand that waiver?

19              THE DEFENDANT:  Yes, sir.

20              THE COURT:  All right.  Next, I want to refer you to

21   Section 13, which begins on Page 6 and runs over onto Page 7.

22   It's entitled "Stipulation of Facts and Waiver of Federal Rule of

23   Evidence 410".

24        Now, this section relates to a couple of different matters,

25   the first of which is the Stipulation of Facts, which is attached

to the plea agreement as Exhibit B, and I want to turn your

attention to that document now.

That is a three-page document and, on the third page, is

that your signature which appears there?

THE DEFENDANT:  Yes, sir, it is.

THE COURT:  And have you read the Stipulation of Facts?

THE DEFENDANT:  I have, sir.

THE COURT:  And do you agree that all of the facts

contained in the stipulation are true?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  A little bit about what will be

happening from here on out.

I will be asking the probation officer to prepare a

Presentence Investigation Report.  That report will contain

detailed recommended factual findings regarding this offense and

your background, among other things.

Ultimately, at sentencing, I will make factual findings

based at least in part on the recommendations contained in the

report.

Now, you and the Government have reached an agreement

regarding certain facts contained in the stipulation, but I want

you to understand that, in this process, neither the probation

officer, nor this Court, are bound by that Stipulation of Facts.

Do you understand that?

THE DEFENDANT:  Yes, sir.

1       THE COURT:  Do you further understand that if I make

2   findings of fact at sentencing that are different from or

3   inconsistent with the facts contained in the stipulation, you

4   will still be bound by your guilty plea and would have no right

5   to withdraw it?  Do you understand that?

6       THE DEFENDANT:  Yes, sir.

7       THE COURT:  All right.  Now, the other matter addressed

8   in Section 13 is a waiver of Federal Rule of Evidence 410.

9       Now, 410 generally provides that information or documents

10  regarding plea negotiations, and this Stipulation of Fact would

11  fall into that category, is generally not admissible at trial.

12  In other words, the Government can't usually use that sort of

13  thing against you at trial.

14      However, under this waiver, if you withdraw from the plea

15  agreement or if it's no longer any good because you have violated

16  one or more of its terms and there is a subsequent trial, then

17  the Government would be allowed to present the Stipulation of

18  Facts in its case in chief or for other purposes at that trial?

19  Do you understand that waiver?

20      THE DEFENDANT:  Yes, sir.

21      THE COURT:  All right.  Next, I want to refer you to

22  Section 14 of the plea agreement, which appears on Page 7, and is

23  entitled "Agreement on Sentencing Guidelines".

24      Now, before we get into this, I want to talk with you a

25  little bit about the federal sentencing guidelines.  Has your

1  attorney talked with you about the guidelines and explained to

2  you how they generally work?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Has he shown you that chart in the back of

5  the guidelines book?

6          THE DEFENDANT:  He has.

7          THE COURT:  All right.  I want to have a similar

8  discussion with you sort of based on that chart.  If you'll

9  recall, on the left side of the chart, there's a series of

10  numbers that run from low to high as you go down the page.  Those

11  are offense levels.  And the offense level is calculated by

12  starting with a Base Offense Level, which is a starting point,

13  and that can be adjusted upward or downward, depending on the

14  facts and circumstances of the case, to arrive at an adjusted

15  offense level.

16      Then, consideration can be given to a reduction for

17  acceptance of responsibility.  Has your attorney talked with you

18  about that?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  All right.  Then, you generally arrive at a

21  Total Offense Level.

22      Then you go up to the top of the chart and there are six

23  criminal history categories, and you would fall into one of

24  those, depending on the number of points, if any, assigned to any

25  prior convictions that you may have.

1    Then you combine the criminal history category and the Total

2    Offense Level and arrive at a point in the chart that gives a

3    range of months of imprisonment and, in certain parts of the

4    chart, there are certain alternatives to imprisonment.

5    Do you understand all of this so far?

6    THE DEFENDANT:  Yes, sir.

7    THE COURT:  All right.  Once we arrive at that range of

8    months, I have the authority to sentence you within that range.

9    I also have the authority, under certain circumstances, to

10   sentence you outside of that range, either above it or below it.

11   If I sentence you outside of the guidelines range based on

12   factors identified in the guidelines themselves, it's generally

13   known as a "departure".

14   If I sentence you outside of the guideline range, again,

15   above it or below it, based on factors outside of the guidelines,

16   that's generally known as a "variance".

17   Do you understand all of these things I've told you about

18   the guidelines?

19   THE DEFENDANT:  Yes, sir, I have.

20   THE COURT:  Has your attorney gone over all of those

21   things with you, as well?

22   THE DEFENDANT:  Yes, sir.

23   THE COURT:  All right.  Well, with all of that in mind

24   then, Section 14 contains an agreement that you have reached with

25   the Government on one or more provisions of the guidelines.  Now,

1       this is similar to the Stipulation of Fact in that the probation

2       officer's report, Presentence Report, will contain a recommended

3       guideline calculation.

4           Ultimately, at sentencing, I will make guideline findings

5       based at least in part on the recommendation made by the

6       probation officer.

7           Now, once again, you have reached an agreement with the

8       Government that's set forth here in Section 14, but I want you to

9       understand that, in this process, neither the probation officer,

10      nor this Court, are bound by that agreement on the guidelines.

11      Do you understand that?

12                  THE DEFENDANT:  Yes, sir, I do.

13                  THE COURT:  And do you further understand that if I

14      make guideline findings at sentencing that are different from or

15      inconsistent with this agreement, you will still be bound by your

16      guilty plea and would have no right to withdraw it?

17                  THE DEFENDANT:  Yes, sir.

18                  THE COURT:  All right.  Next, I want to refer you to

19      Section 15 of the plea agreement, which begins on Page 7 and runs

20      over onto Page 8, and is entitled "Waiver of Appeal and

21      Collateral Attack".

22          Now, this section relates to a couple of different

23      procedures that I want to describe to you briefly.

24          An "appeal" is a procedure by which a party to case before a

25      District Court like this one and, in a criminal case, it's often

1    the defendant, goes to the Court of Appeals, or the next level up

2    of the court system, and argues that certain errors or mistakes

3    may have taken place in their criminal case before the District

4    Court.

5         A "collateral attack", which is sometimes referred to as a

6    "habeas corpus petition", is a separate civil matter in which a

7    defendant may also argue, after their criminal case is over, that

8    certain errors or mistakes may have taken place in their criminal

9    case before the District Court.

10        Now, do you understand those two procedures, at least as

11   I've briefly described them to you?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  All right.  Now, the other thing I want to

14   go over with you before we get into Section 15, is that there are

15   two phases to a criminal case.  The first phase is the phase in

16   which guilt or innocence is determined, sometimes by a trial;

17   much more often by a guilty plea like what we're doing today.

18   That phase of the case starts at the very beginning of the case

19   and runs throughout the case until that determination is made.

20        The second phase of the case is the penalty phase in which,

21   obviously, the penalty is determined and it concludes generally

22   with a sentencing hearing at the end of the case.

23        Now, do you understand the two phases of a criminal case as

24   I have described them to you?

25             THE DEFENDANT:  Yes, sir.

1        THE COURT:  All right.  With all of that in mind then,

2   in the first paragraph, we have an appeal waiver, and I want to

3   go over that with you now.

4      Do you understand that, in the first paragraph, you waive

5   the right to appeal your conviction and any sentence of

6   imprisonment, fine or term of supervised release, or the manner

7   in which the sentence was determined, so long as your sentence is

8   within or below the guideline range corresponding to an offense

9   level 12?

10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  Do you understand that waiver?

12        THE DEFENDANT:  Yes, sir.

13        THE COURT:  Anything about it that you don't understand

14   or that you have questions about?

15        THE DEFENDANT:  No, sir.

16        THE COURT:  All right.  In the second paragraph, do you

17   also understand that you may not file a later civil proceeding,

18   sometimes referred to as a "collateral attack" or a "habeas

19   corpus petition", challenging your plea, conviction or sentence?

20        THE DEFENDANT:  Yes, sir, I understand that.

21        THE COURT:  And, finally, do you understand that you

22   are in no event waiving your right to claim ineffective

23   assistance of counsel either on appeal or by collateral attack?

24        THE DEFENDANT:  Yes, sir.

25        THE COURT:  All right.  Finally, I want to refer you to

Section 16, which appears on Page 8, and is entitled "Waiver of
FOIA and Privacy Right".

Now, this waiver means you can't go back after this case is
over and seek documents or other information about the case, even
with a Freedom of Information Act request.  Do you understand
that waiver?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. DiPiero, have you thoroughly reviewed
the plea agreement with your client?

MR. DIPIERO:  I have, Your Honor.

THE COURT:  Do you believe he fully understands the
various terms and conditions of the plea agreement, including the
waivers and other matters that I have gone over with him this
morning?

MR. DIPIERO:  I do, Your Honor.

THE COURT:  Mr. Porter, have you reviewed the plea
agreement in detail with your attorney?

THE DEFENDANT:  Yes, sir.

THE COURT:  And do you believe that you have had
adequate time to discuss your case fully with your attorney?

THE DEFENDANT:  Yes, sir, Your Honor.

THE COURT:  And has your attorney answered any
questions that you've had about your case?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. DiPiero, during your representation of

the defendant, has he been cooperative?

        MR. DIPIERO:  Absolutely.

        THE COURT:  Mr. Porter, has anything further been agreed to, either or orally or in writing, that is not contained in the plea agreement?

        THE DEFENDANT:  No, sir.

        THE COURT:  All right.  I will order that the plea agreement be filed.

    I will find that the defendant understands and agrees with the terms contained in the plea agreement.

    I will defer accepting or rejecting the plea agreement until sentencing, after the Presentence Report has been received and considered.

    Now, Mr. Porter, have you received and read and reviewed with your attorney the information or proposed charging document in this case?

        THE DEFENDANT:  Yes, sir.

        THE COURT:  And do you understand the charges contained in the information?

        THE DEFENDANT:  Yes, sir.

        THE COURT:  Would you like me to read the information to you or will you waive the reading of the information?

        THE DEFENDANT:  I'll waive it.

        THE COURT:  As I understand it, you will be pleading guilty to a single-count information, which charges you with

willful failure to collect and pay over payroll tax in violation of 26 USC Section 7202. I now want to go over that charge and that statute with you in just a little bit more detail.

Section 7202 provides in pertinent part that:

"Any person required under this title to collect, account for, and pay over any tax imposed by this title who willfully fails to collect or truthful account for and pay over such tax shall, in addition to the other penalties provided by law, be guilty of a crime against the United States."

Now, in order to prove that charge against you, the Government would have to prove the following elements of that charge each beyond a reasonable doubt, and they are:

First, that you were required by law or regulation to collect, account for, and pay over a federal tax;

And, second, you failed to collect or to truthfully account for and pay over the tax;

And, third, your failure was willful.

Now, I'm going to share with you some definitions that apply to what I just told you.

First of all, to act "willfully" means to act voluntarily and deliberately and with the intention to violate a known legal duty.

Negligent conduct is not enough to constitute willfulness.

Willfulness requires the Government to prove that the law imposed a duty on you, that you knew of this duty, and that you

voluntarily and intentionally violated that duty.

The term "person" includes an officer or employee of a corporation, or a member or employee of a partnership, who will, as such officer, employee, or member, is under a duty to perform the act in respect of which the violation occurs.

An officer or employee of a corporate employer is a person that can be convicted of violating Section 7202.

I would also note that, although it's not specified in the elements that I've recited, that the payroll taxes are subject to Section 7202.

Is there any objection to the elements as I have described them?

MS. THOMAS:  No, Your Honor.

MR. DIPIERO:  No, Your Honor.

THE COURT:  All right.  Next, Mr. Porter, I want to go over with you the maximum and any minimum sentences you may face as a result of your plea, and that is a maximum term of imprisonment of five years; a maximum fine of $250,000.00, or twice the gross pecuniary gain on loss resulting from your conduct, whichever is greater; a maximum term of supervised release of three years.  A mandatory special assessment of $100.00 would be required.  Restitution could be ordered if it were found to be applicable, as it appears it may be.

Next, I want to return to our discussion of the guidelines. They are advisory, meaning they're not mandatory or don't have to

1    be followed, but they'll nevertheless play an important role in

2    your case from here on out.

3        This Court will consider the factors set forth in 18 U. S.

4    C. Section 3553(a), including the advisory guidelines in

5    determining the appropriate sentence in this case.

6        I now want to ask you some questions that will help me

7    understand your understanding of the guidelines.

8        Have you discussed with your attorney the various factors

9    which apply in determining what the sentence in your case may be

10   under the advisory guidelines?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  And do you understand that under this

13   single-count information, you cannot in any event receive a

14   greater sentence than the statutory maximum that I explained to

15   you earlier?

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  Do you understand that the Court will not

18   determine a sentence for your case until a later date, when a

19   Presentence Report has been completed, and both you and the

20   Government have had an opportunity to challenge the facts and

21   analysis reported by the probation officer?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  Do you understand that under a concept

24   known as "relevant conduct", this Court, in determining the Total

25   Offense Level for sentencing purposes under the guidelines may

1    take into account any conduct, circumstances or injuries relevant

2    to the crime of which you may be convicted?

3                THE DEFENDANT:  Yes, sir.

4                THE COURT:  Do you understand that after the Court has

5    determined what advisory guidelines apply to your case, the Court

6    has the authority to vary or depart from the advisory guidelines

7    and impose a sentence that is more severe or less severe than the

8    sentence called for by the guidelines?

9                THE DEFENDANT:  Yes, sir.

10               THE COURT:  Do you understand that in determining your

11   sentence, the Court is obligated to calculate the applicable

12   sentencing guideline range, and to consider that range, possible

13   departures under the guidelines, and other sentencing factors

14   under 18 U. S. C. Section 3553(a)?

15               THE DEFENDANT:  Yes, sir.

16               THE COURT:  Do you understand that parole has been

17   abolished and, if you're sentenced to prison, you will not be

18   released on parole?

19               THE DEFENDANT:  Yes, sir.

20               THE COURT:  Do you understand if the Court accepts your

21   plea of guilty and the sentence ultimately imposed upon you is

22   more severe than you had hoped for or expected, you will still be

23   bound by your guilty plea and would have no right to withdraw it?

24               THE DEFENDANT:  Yes, sir.

25               THE COURT:  Do you understand that if you plead guilty

to this single-count information which charges you with a felony
you may lose important civil rights, such as the right to vote;
the right to serve on a jury; the right to hold public office;
and the right to own or possess a firearm?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Mr. Porter, you have the right
to have this matter presented to a federal grand jury and I want
to briefly explain that process to you.

A grand jury is composed of at least 16 and not more than 23
persons, and at least 12 grand jurors must find that there is
probable cause to believe that you committed the crime with which
you are charged before you may be indicted.

Now, do you see any benefit of having this case presented to
a federal grand jury?

THE DEFENDANT: No, sir.

THE COURT: Do you see any prejudice or disadvantage to
you of not having the case presented to a federal grand jury?

THE DEFENDANT: No, sir.

THE COURT: All right. Your counsel has been provided
with a waiver of indictment form and I want to go over that with
you now. It contains the style of the case, *United States of
America v. Alvis R. Porter*, the criminal action number, and it's
entitled "Waiver of Indictment", and it states as follows:

"*I, Alvis R. Porter, am accused of violating 26 U. S. C.
Section 7202. I have been advised of the nature of the charge,*

*of the proposed information, and of my rights. I hereby waive in*
*open court prosecution by indictment and consent that the*
*proceeding may be by information rather than by indictment."*

And there's space for you to sign and date, space for your counsel to sign, and space for me to sign.

Do you understand what I just read to you?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Anything about the waiver of indictment procedure that you don't understand or have questions about?

THE DEFENDANT: No, sir.

THE COURT: All right. Then, if you're prepared to do so, I'll ask you to execute the Waiver of Indictment Form by signing and dating it. Then, I will ask your counsel to sign it and tender it to the Court.

All right. I'll note for the record that the defendant has signed and dated the Waiver of Indictment Form. It has been endorsed by his counsel, and I am now signing it, and I will order that it be made a part of the record for this proceeding.

Next, Mr. Porter, I want to talk with you regarding your trial and constitutional rights.

You have the right to plead not guilty and maintain a not guilty plea throughout these proceedings, including at trial.

You have the right to be represented by counsel.

You have the right to a speedy and public trial by a jury composed of citizens of this district.

1    You have the right to confront and have your attorney cross

2  examine witnesses and have your attorney move to suppress any

3  evidence he believes was illegally or unconstitutionally

4  obtained.

5    You have the right not to testify or otherwise incriminate

6  yourself and your exercise of this right cannot be held against

7  you.

8    Do you understand these rights so far?

9        THE DEFENDANT:  Yes, sir.

10        THE COURT:  You have the right to have the Government

11  come in here and prove its case beyond a reasonable doubt.

12    The jury's verdict would have to be unanimous.

13    You have the right to present evidence on your on behalf.

14    You have the right to testify on your own behalf at trial.

15    And you have the right to subpoena witnesses to testify for

16  you.

17    Do you understand all of these rights?

18        THE DEFENDANT:  Yes, sir.

19        THE COURT:  Any of them that you don't understand or

20  that you have questions about?

21        THE DEFENDANT:  No, sir.

22        THE COURT:  Do you understand that, other than your

23  right to counsel, you will be giving up all of these rights by

24  entering a plea of guilty?

25        THE DEFENDANT:  Yes, sir.

```
1              THE COURT:  Do you understand that, once you have

2    entered a plea of guilty, there is not going to be any trial, no

3    jury verdict, and no findings of innocence or guilt based on

4    disputed evidence presented to me or to a jury?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  Do you believe that you fully understand

7    the consequences of entering a plea of guilty?

8              THE DEFENDANT:  Yes, sir, I do.

9              THE COURT:  Mr. DiPiero, having reviewed in detail this

10   case and the plea agreement with your client, do you believe that

11   he fully understands his rights and fully understands the

12   consequences of entering a plea of guilty?

13             MR. DIPIERO:  Yes, Your Honor.

14             THE COURT:  All right.  I note that there is a

15   Stipulation of Facts that appears to address the elements of the

16   offense.  Is there any objection to the Court utilizing the

17   stipulation in its consideration of the factual basis for the

18   plea?

19             MS. THOMAS:  No, Your Honor.

20             MR. DIPIERO:  No, Your Honor.

21             THE COURT:  All right.  The Court will so proceed,

22   although I do intend to defer making a factual basis finding.

23        Mr. Porter, will you please stand?

24        As to the charge contained in the single-count information,

25   how do you plead, sir, guilty or not guilty?
```

1     THE DEFENDANT:  Guilty.

2     THE COURT:  You may be seated.

3     Your counsel has been provided with a written plea of guilty

4     form.  I would ask that you go over that with him, if necessary,

5     sign and date it.  Then, I will ask him to sign it and tender it

6     to the Court.

7     All right.  I'll note that the defendant has signed and

8     dated the written plea of guilty form, it has been witnessed by

9     his counsel, and I will order that it be made a part of the

10    record for this proceeding.

11    Mr. Porter, is this plea the result of any threat, or

12    coercion, or harassment of you by anyone?

13    THE DEFENDANT:  No, sir.

14    THE COURT:  Is it the result of any promise or

15    inducement other than those contained in the plea agreement?

16    THE DEFENDANT:  No, sir.

17    THE COURT:  Are you pleading guilty to protect anyone?

18    THE DEFENDANT:  No, sir.

19    THE COURT:  Are you acting voluntarily and of your own

20    free will in entering this guilty plea?

21    THE DEFENDANT:  Yes, sir.

22    THE COURT:  Has anyone promised or predicted the exact

23    sentence which will be imposed in your case?

24    THE DEFENDANT:  No, sir.

25    THE COURT:  Do you understand that no one could know at

1    this time the exact sentence which will be imposed?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Has your attorney adequately represented

4    you in this matter?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  Has your attorney left anything undone

7    which you think should have been done?

8              THE DEFENDANT:  No, sir.

9              THE COURT:  Have you or your attorney found any defense

10   to the charge contained in the information?

11             THE DEFENDANT:  No, sir.

12             THE COURT:  Are you, in fact, guilty of the crime

13   charged in the information?  In other words, did you do it?

14             THE DEFENDANT:  Yes, sir, I am.

15             THE COURT:  All right.  I will find that the defendant

16   is competent and capable of entering an informed plea; that the

17   plea is freely and voluntarily made; that the defendant

18   understands the nature of the charges and is aware of the

19   consequences of the plea.

20       I will find that the defendant understands his rights and

21   understands that he is giving up these rights by entering a plea

22   of guilty.

23       I will defer a factual basis finding, but I will accept the

24   plea of guilty to the single-count information and will defer

25   adjudging the defendant guilty until the time of sentencing.

1          I will ask the probation officer to prepare a Presentence

2     Investigation Report.

3          Mr. Porter, it is important that you cooperate fully and

4     truthfully with the probation officer in the preparation of the

5     Presentence Report.  If you fail to cooperate fully and

6     truthfully with the probation officer, you may be subject to an

7     enhancement of your sentence or the forfeiture of certain

8     sentence reductions for which you might otherwise be eligible.

9          It is also important that you not commit any additional

10    crimes between now and sentencing, as there may be additional

11    punishments imposed for comitting additional crimes.

12         I'm going to set this matter for sentencing on October 16th,

13    2014, at 10:00 a.m.

14         I will put the other presentence dates in my post-plea

15    order.

16         What's the Government's position with regard to bond?

17              MS. THOMAS:  No objection.

18              THE COURT:  All right.  I will allow the defendant to

19    be released today on a $10,000.00 unsecured bond pending

20    sentencing.

21         I've already done my part of the paperwork.  So, Mr.

22    DiPiero, you and your client just need to take care of your part

23    after the conclusion of the hearing.

24         The conditions will be the standard conditions and/or those

25    recommended in the Pretrial Services Report.

1          Anything else we need to take up today?

2                    MS. THOMAS:  No, Your Honor.

3                    MR. DIPIERO:  No, Your Honor.  Thank you, sir.

4                    THE COURT:  All right.  Thank you.

5          (Proceedings concluded at 9:53 a.m., July 10, 2014.)

6

7     CERTIFICATION:

8          I, Ayme A. Cochran, Official Court Reporter, certify that

9     the foregoing is a correct transcript from the record of

10    proceedings in the matter of United States of America, Plaintiff

11    v. Alvis R. Porter, Defendant, Criminal Action No. 2:14-cr-00112,

12    as reported on July 10, 2014.

13

14    s/Ayme A. Cochran, RMR, CRR                    November 9, 2016

15    Ayme A. Cochran, RMR, CRR                           DATE

16

17

18

19

20

21

22

23

24

25